UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA SALGUERO, <br><br> Plaintiff, <br><br> v. <br><br> MONDELĒZ INTERNATIONAL, INC., <br><br> Defendant. | No. 25 CV 2139 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Defendant Mondelēz International, Inc. manufactures, markets, and sells energy snack bars that are labeled as "climate neutral certified." Plaintiff Cynthia Salguero purchased defendant's Zbar product at a Sam's Club and alleges that Mondelēz's climate neutral message is deceptive. She brings claims against Mondelēz for violations of two California consumer protection statutes, as well as for breach of express warranty and unjust enrichment. Defendant moves to dismiss under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, defendant's motion to dismiss is granted.

I.  **Legal Standards**

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on lack of subject matter jurisdiction. Article III of the Constitution confines the federal judicial power to resolving "cases" and "controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A case or controversy exists only where the plaintiff has a personal stake in the case (i.e., standing). *Id.* To satisfy standing, "a plaintiff must show (i) that

he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). As the party invoking federal jurisdiction, plaintiff bears the burden of establishing standing. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). Because defendant makes a facial challenge to plaintiff's standing, I accept all well-pleaded allegations as true and draw all reasonable inferences in plaintiff's favor. *Id.*

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint's sufficiency, courts "accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022).

A plaintiff alleging fraud or deceptive practices under California's Consumers Legal Remedies Act and Unfair Competition Law must meet the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), the plaintiff must identify "the who, what, when, where, and how"

of the alleged fraud or deceptive conduct. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019).

## II. Background

### A. Facts Considered

Mondelēz requests judicial notice of four exhibits attached in support of its motion to dismiss. [26] at 7; [27].[1] On a 12(b)(6) motion, I am limited to considering allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). "A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

Exhibits 1 and 2 are copies of two questions and answers on the Clifbar.com website. [27-1]; [27-2]. Mondelēz's motion also provides a link to these pages. [26] at 7; [27] at 2. But, as of the date of this opinion, the links do not pull up the information shown in the exhibits. Although plaintiff does not dispute the authenticity of the exhibits, further investigation into the CLIF website does not readily provide a source for the exhibits. Ultimately, the information captured in the exhibits is irrelevant to

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The court has subject-matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2): plaintiff is a citizen of California, defendant is a corporation organized in Virginia and with its principal place of business in Illinois, and the aggregate claims of all members of the proposed class are in excess of $5,000,000. [23] ¶¶ 20, 23–24.

3

the disposition of defendant's motion to dismiss, so I decline to take judicial notice of Exhibits 1 and 2.[2]

### B. Mondelēz's Product

Defendant Mondelēz is one of the largest snack companies in the world, with a global net revenue of about $36 billion. [23] ¶ 24. Mondelēz markets, sells, and distributes Zbars throughout the United States. [23] ¶ 24. Plaintiff Cynthia Salguero is a California resident who purchased a 36-count package of Zbars from a Sam's Club located in Fullerton, California. [23] ¶ 23. Before spending $21.98 on the product, Salguero reviewed its packaging and saw that it was labeled as "climate neutral." [23] ¶ 23. The product's packaging states that it is "climate neutral certified." [23] fig.2. Salguero relied on this representation when she purchased the Zbars and understood it to mean that the product did not cause pollution. [23] ¶ 23.

---

[2] The same goes for Exhibits 3 and 4. Exhibit 3 is a copy of a page on the CLIF website explaining what it means for CLIF Kid to be a climate neutral certified brand. Exhibit 4 is a copy of information that can be found on the Change Climate Project's website, which provides additional details about the meaning of the certification. While these two documents can be found on the CLIF and Change Climate Project's websites, respectively, the validity of the certification process is beyond the scope of the pending motion (as discussed in more detail below). The information captured in these exhibits is irrelevant to the disposition of defendant's motion, I decline to consider them.

4



The Change Climate Project is a third-party organization that helps companies measure, manage, and reduce the footprint of their products. [23] ¶ 47. Companies must comply with the Project's standards in order to achieve "climate neutral" certification. [23] ¶ 47. This requires a company to (1) measure their emissions from "cradle to customer" over the course of a calendar year; (2) create a "reduction action plan" that sets targets for reducing emissions; and (3) offset any remaining emissions through the purchase of carbon credits. [23] ¶ 47.

Salguero alleges that Mondelēz's climate neutral representations are false and misleading because the product's manufacturing produces greenhouse gases and causes pollution. [23] ¶ 23. According to Salguero, Zbars result annually in the emissions of over 50,000 tons of carbon dioxide—the same amount as over 12,500

5

gasoline-powered cars. [23] ¶ 11. This increased carbon dioxide emission contributes to a higher concentration of greenhouse gases, which in turn contributes to climate change. [23] ¶ 27.

Salguero alleges that a reasonable consumer could interpret "climate neutral" to mean that the manufacturing, distribution, and marketing of Zbars does not exert a negative effect on the climate. [23] ¶ 46. She brings state-law claims under California's Consumers Legal Remedies Act and Unfair Competition Law, as well as claims for breach of express warranty and unjust enrichment. [23] ¶¶ 84–132. Salguero seeks to represent a nationwide class of consumers and a California subclass. [23] ¶¶ 71–83.

### III. Analysis

#### A. Article III Standing

Mondelēz moves to dismiss on all claims. Mondelēz first argues that Salguero fails to allege an injury in fact and thus lacks standing under Rule 12(b)(1). A plaintiff must show standing for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Salguero's claims relate specifically to Zbars, rather than CLIF Kid products more broadly. She was not injured by products she did not buy. *See Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 936 (7th Cir. 2021). But so long as Salguero suffered some injury in fact from a product she did buy, she has standing to sue. "[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972).

Salguero has alleged specific facts to support a concrete economic injury: Salguero alleges that she would not have bought Zbars (or would not have paid a price premium) had she known that the product was not climate neutral. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748. 751 (7th Cir. 2011) (noting that a financial injury creates standing). Salguero is not required to plead more than that, such as what prices she would have paid or whether she could have purchased a similar product for a lesser price. *See id.*; *see also Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *6 (N.D. Ill. Sept. 13, 2022).[3]

Mondelēz further challenges Salguero's standing to pursue injunctive relief. To establish standing for injunctive relief, Salguero must allege a "real and immediate" threat of future violations. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 448, 495–96 (1974).

Salguero states that she would not have purchased Zbars—or would have paid substantially less for them—if she had known they were not "climate neutral." [23] ¶ 70. She is now aware that Mondelēz's products do not lack a net effect on the climate system. Thus, she has not alleged that she is at risk of future harm from Mondelēz's deceptive advertising. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741

---

[3] Mondelēz cites *Sabo v. Wellpet, LLC* for the proposition that a plaintiff must allege a non-speculative basis for inferring the product's "worth" absent the representation or that the plaintiff could have purchased a comparable product lacking the representation for a lesser price. 282 F.Supp.3d 1040, 1041 (N.D. Ill. 2017). Salguero cites studies finding that consumers are willing to pay more money for brands they perceive to be eco-friendly. [23] ¶¶ 29–31. Salguero has alleged a non-speculative injury under Article III.

7

(7th Cir. 2014) (finding that once a plaintiff is aware of the defendant's sales practices, she "is not likely to be harmed by the practices in the future" and "is not entitled to injunctive relief").[4]

## B. California Consumer Protection Statutes

California's Consumer Legal Remedies Act prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1750 *et seq*. California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17500 *et seq*. To state a claim under these two statutes, a plaintiff must plausibly allege that the challenged representations are likely to deceive a reasonable consumer. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Here, Salguero challenges the representation that Zbars are "climate neutral" and alleges that a reasonable consumer would interpret such a representation to mean that the product does not contribute to climate change. [23] ¶ 10.

The question of whether a business practice is deceptive will usually be a question of fact not appropriate for decision at the pleading stage. *Williams*, 552 F.3d at 938. However, "where a court can conclude as a matter of law that members of the

---

[4] Salguero points to *Leiner v. Johnson & Johnson Consumer Cos., Inc.*, 215 F.Supp.3d 670, 672–73 (N.D. Ill. 2016). That case focused on (1) the distinction between standing and entitlement to relief and (2) a concern that closing the federal courthouse to injunctive relief claims would undermine consumer-protection policy. There is a difference between standing and entitlement to relief, but in federal court, Article III standing remains a prerequisite for each form of relief sought. *See Freeman v. MAM USA Corp.*, 528 F.Supp.3d 849, 858 (N.D. Ill. 2021) (distinguishing between the viability of injunctive relief in state court as opposed to federal court). Without a threat of future injury, Salguero does not present a case or controversy for an injunction.

public are not likely to be deceived by the product packaging, dismissal is appropriate." *Gitson v. Trader Joe's Co.*, 2013 WL 5513711, at *6 (N.D. Cal. Oct. 4, 2013); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming a district court's dismissal of claims under California consumer protection statutes).

Salguero's claims allege that Zbars were "falsely labeled and advertised as 'climate neutral.'" [23] ¶¶ 100, 117. Neither count in the complaint alleges that it was false or deceptive for Mondelēz's products to be labeled as "climate neutral certified." Mondelēz did not advertise that its product was in fact climate neutral, but instead that its product was *certified* as climate neutral. "This is a distinction with a difference." *Bohen v. ConAgra Brands, Inc.*, 2024 WL 1254128, at *7 (N.D. Ill. Mar. 25, 2024).

Salguero also does not allege that Mondelēz violated Change Climate Project's standards or that the Change Climate Project certification on the packaging is inaccurate. There is nothing deceptive about Mondelēz including on its packaging a true statement. *See Sanchez v. Walmart Inc.*, 733 F.Supp.3d 653, 671 (N.D. Ill. 2024) (finding that where a statement is factually true, it is not actionable as being deceptive or misleading by the defendant). Salguero takes issue with Change Climate Project's climate neutral representation because it failed to provide information on how companies were offsetting their emissions, but Mondelēz's representation was true—Change Climate certified the product.

In an effort to distinguish this case from *Sanchez*, Salguero cites the Green Guides. The Federal Trade Commission's Green Guides provide instruction on how

9

reasonable consumers are likely to interpret certain environmental claims in marketing. *See* 16 C.F.R. § 260.1(c)–(d). "The Green Guides are more than persuasive authority in California; they have been codified as law." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 784 (9th Cir. 2024).

The Guides note that a "[t]hird-party certification does not eliminate a marketer's obligation to ensure that it has substantiation for all claims reasonably communicated by the certification." 16 C.F.R. § 260.6(c). According to Salguero, a reasonable consumer could interpret Mondelēz to itself be claiming that Zbars are climate neutral. [33] at 11. In contrast to the blue tick label at issue in *Sanchez* and *Bohen*, which clearly identifies the source of the certification, Salguero argues that the instant certification fails to indicate third-party involvement. [33] at 11. In response, Mondelēz argues that the assumption underpinning § 260.6 is that certifications *should* be from independent third parties and thus self-awarded certifications have a greater potential to mislead. [26] at 11.

I agree with Mondelēz that the instant certification is not meaningfully different from the certification at issue in *Sanchez*. While "climate neutral certified" does not make clear the source of this certification (as the label neither names nor provides information about Change Climate Project, and a reasonable consumer would likely not associate the corresponding logo with the organization), it cannot reasonably be attributed to Mondelēz. The certification appears in the bottom corner of the product's packaging and is perpendicular to the rest of the text on the packaging. [23] fig.2. Reasonable consumers are generally not expected to conduct

10

independent research to substantiate claims made on a product's packaging, but neither are they permitted to defy common sense and everyday experiences. *Compare Della v. Colgate-Palmolive Co.*, 2024 WL 457798, at *23 (N.D. Cal. Feb. 6, 2024), *with Wienhoff v. Conagra Brands, Inc.*, 626 F.Supp.3d 1015, 1024 (S.D. Ill. 2022). Ultimately, the fact that Zbars were indeed "climate neutral certified" by Change Climate Project—and the fact that Salguero does not contest the truthfulness of this statement—is fatal to her claims.[5]

While a true advertisement *can* be deceptive if "couched in such a manner that is likely to mislead or deceive the consumer," that is not the case here. *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332 (1998). Salguero contrasts the "fine print" of the word "certified" with the "large, bolded font" of the term "climate neutral." [23] ¶ 7. But Salguero does not allege that the modifier was illegible, and, as depicted in the complaint, it was clear and readable. *See, e.g., Dinan v. SanDisk LLC*, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020).

### C.    Breach of Express Warranty

Salguero's claim for breach of express warranty fails for the same reason. Once again, Salguero alleges that Zbars are not "climate neutral." [23] ¶ 88. Once again, the count omits the "certified" modifier. Like a claim for fraud or misrepresentation,

---

[5] Mondelēz adds that even "climate neutral" alone, without the "certified" language, would not be deceptive. [26] at 16–17. But while I agree that environmentally conscious consumers are unlikely to understand "climate neutral" to mean having *no* impact on the climate, the fact-intensive nature of the reasonable consumer test would preclude this argument from succeeding as a matter of law. *See, e.g., Williams*, 552 F.3d at 938. Thus, if the product merely advertised that it was "climate neutral," as Salguero's complaint frequently and incorrectly states that it did, then this case would not be susceptible to dismissal on a Rule 12(b)(6) motion.

11

a claim for breach of an express warranty can be overcome by the fact that the statement in question is true. *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001).

In opposition, Salguero argues that there is a factual dispute over whether an express promise was made. [33] at 16. Yet Mondelēz is not challenging *whether* an express promise was made but only *what* the express promise actually was. Salguero's complaint misstates the promise that Mondelēz was making to prospective customers. Salguero's attempt to salvage her claim by arguing that Mondelēz "buries" the words "certified" in small font fares no better. *See Dinan*, 2020 WL 364277, at *8.

### D.     Unjust Enrichment

The parties dispute whether California or Illinois law applies to Salguero's unjust enrichment claim. Under Illinois law, unjust enrichment rises or falls with other claims for misrepresentation or breach of warranty. *See Vanzant*, 934 F.3d at 739–40. By contrast, though California courts have wavered on the issue, the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). In other words, unjust enrichment is an independent cause of action under California law.

The Class Action Fairness Act is part of the diversity jurisdiction statute. 28 U.S.C. § 1332. "Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674,

12

684 (7th Cir. 2014). For unjust enrichment claims, Illinois courts apply the law of the forum that has the most significant relationship to the parties and the occurrence. *Leeder v. Nat'l Ass'n of Realtors*, 601 F.Supp.3d 301, 311 (N.D. Ill. 2022).

Aside from Mondelēz's principal place of business being in Illinois, the vast majority of this case arises in California: Salguero is a resident of California, Mondelēz sells Zbars in California, and Salguero purchased Zbars in California. [33] at 18–19. Thus, I agree with plaintiff that California law applies and an unjust enrichment claim can proceed as a standalone cause of action.

But this is ultimately a distinction without a difference. Under California law, a plaintiff alleging unjust enrichment "must show that a defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners*, 828 F.3d at 1133. Restitution typically requires "that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2 (2015)). There is no plausible claim of fraud or coercion on the part of Mondelēz. The representation depicted on the packaging of their product made a true statement: the product was "climate neutral certified" per the standards of a third-party organization.

Mondelēz's packaging was not deceptive. It truthfully stated that Zbars were "climate neutral certified." Salguero cannot instead contest the veracity of the statement "climate neutral," absent the modifier, because Mondelēz does not make that representation. Salguero amended her complaint once in response to a motion to

13

dismiss and does not suggest how she could amend again to cure the problem. Amendment would be futile, because "climate neutral certified" was a true statement. Dismissal is with prejudice.

## IV. Conclusion

Mondelēz's motion to dismiss, [25], is granted. The first amended complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: October 27, 2025